**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **TRACI BURGEN** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action File No.** |
| v. ) | |
| ) | _____ |
| **PINE ENTERPRISES LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

# COMPLAINT

This action is brought pursuant to the Emergency Paid Sick Leave Act ("EPSLA") provisions of the Families First Coronavirus Response Act ("FFCRA"), Pub. L. 116-127, div. E, §§ 5101 et seq.,134 Stat. 195 – 192 et seq. (Mar. 18, 2020), as amended by Pub. L. 116–136, div. A, title III, §§3602, 3604(b), 3611(2), (5), (6), (8), (9), 134 Stat. 410, 411, 414, 415 (Mar. 27, 2020) (hereinafter cited as EPSLA §___"), and as regulated under 29 CFR Part 826, §§826.10 et seq. Plaintiff Traci Burgen ("Burgen") seeks equitable relief; general, compensatory, and exemplary damages; costs; attorneys' fees; and such other appropriate relief for the injuries she suffered from the unlawful conduct of Pine Enterprises LLC ("Pine Enterprises").

## **Parties**

1.

Plaintiff Burgen is currently a resident and citizen of the State of Georgia and is subject to the Court's jurisdiction.

2.

At all times relevant to this Complaint, Plaintiff was an employee of Pine Enterprises within the meaning of the EPSLA § 5110(1)(A), 29 CFR § 826.10(a) and the Fair Labor Standards Act, 29 U.S.C. § 203(e).

3.

Defendant Pine Enterprises is an employer within the meaning of the EPSLA § 5110(2), 29 CFR § 826.10(a) and the Fair Labor Standards Act, 29 U.S.C. § 203(d). Pine Enterprises may be served with process by service upon Jean Cabral, member and manager of Pine Enterprises, 796 Brogdon Rd., Suite 3953, Suwanee, Georgia 30024, pursuant to O.C.G.A. § 9-11-4(e)(5) and Fed. R. Civ. P. 4.

4.

At all times relevant to this Complaint, Defendant Pine Enterprises employed less than 500 employees.

5.

On information and belief, the owners and members of Pine Enterprises are Robert Cabral and Jean Cabral.

6.

Both Robert Cabral and Jean Cabral exercise leadership, management, and operational control over Pine Enterprises.

## Jurisdiction and Venue

7.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

8.

Venue lies in the Northern District of the State of Georgia pursuant to 28 U.S.C. § 1391 because all parties to this action reside in the boundaries of this judicial district and because the unlawful employment practices alleged in this action were committed in this district.

## Factual Allegations

9.

On November 16, 2020, Pine Enterprises employed Burgen to work as accounting/payroll/HR specialist.

10.

As accounting/payroll/HR specialist for Pine Enterprises, Burgen was paid a salary of $48,000 and benefits including health insurance, holidays, vacation, and paid time off.

11.

On December 8, 2020, Burgen's husband tested positive for COVID-19. In the course of their marriage, Burgen regularly spent time with her husband leading up to his diagnosis and, therefore, was exposed to a person infected with COVID-19.

12.

The same day, Burgen called her supervisor, Jean Cabral, and reported her husband's infection of COVID-19 and, thus, her exposure to a person with COVID-19. Cabral directed Burgen to quarantine at home for fourteen days but declared that time off would be without pay.

13.

In a same-day text to Burgen, Cabral told Burgen that as a condition to returning to work she must obtain a negative test for COVID-19 at least 48 hours before returning to work. Burgen responded to Cabral's text by reminding her that the CDC had reduced the recommended time for quarantine before returning to work as long as the returning employee never developed symptoms of the disease.

14.

On December 9, 2020, Jean Cabral texted Burgen and directed her to quarantine for 14 days and to submit to Pine Enterprises her husband's medical records establishing his positive COVID test.

15.

Burgen then called her family's primary physician, Dr. Richard Maxa, for directions about COVID-19 infection, exposure, and testing. Representatives of Dr. Maxa directed Burgen to self-quarantine due to her exposure to COVID-19. Representatives of Dr. Maxa also told Burgen that she could be tested only if she displayed COVID-19 symptoms otherwise testing would be limited to a testing window 48 hours before she intended to return to work but after completing the required quarantined period of time.

16.

In a December 10, 2020 text, Cabral asked Burgen if she had obtained a rapid test to determine whether she had contracted COVID-19. Burgen reported that her doctor did not provide COVID-19 testing to an asymptomatic person until 48 hours before the person intended to return to work. Burgen then said that she would return to work on December 22 assuming she remained symptom free and tested negative for COVID-19.

17.

Continuing the string of December 10 texts, Cabral pointed out that Burgen's return-to-work date should be December 23. Prior to being exposed to COVID-19, Burgen had requested and received permission to be off Christmas week. Cabral then directed Burgen to return to work the following Monday, December 28, the next business day following Christmas.

18.

On December 17, Burgen received an online notification from a job placement platform that Pine Enterprises was seeking a accounting/payroll/HR specialist, the position currently held by Burgen.

19.

After completing her quarantine period and as directed by Cabral, Burgen reported to work at 8 am on December 28.

20.

When Burgen reported to work on the 28th, Cabral told Burgen that she was being fired but would receive pay for 80 hours of work representing a portion of the time that she missed while self-quarantining.

21.

In a December 29 voice-message, Cabral said that she must return a keyboard dongle and provide the COVID-19 diagnosis of Burgen's husband as a condition for releasing the 80-hours of pay.

22.

In response to Cabral's request, Burgen emailed to Cabral the medical records showing that her husband had tested positive for COVID-19.

23.

The following week, Pine Enterprise released to the 80-hour payment to Burgen.

**CAUSE OF ACTION**

24.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

25.

At all times relevant to this action, the relationship between Plaintiff and Defendant Pine Enterprises was a relationship of "employee" to "employer."

26.

Section 5104 of the EPSLA and 29 CFR § 826.150(a) makes unlawful a discharge, discipline, or any other manner of discrimination against an employee because the employee has sought or taken leave under the EPSLA.

27.

Section 5104 of the EPSLA as interpreted through 29 CFR § 826.150(a) makes unlawful a discharge, discipline, or any other manner of discrimination against an employee because the employee has complained about rights or responsibilities related to the EPSLA.

28.

Defendant Pine Enterprise unlawfully discharged Plaintiff because:

(1) she took COVID-19 leave in accordance with EPSLA, and

2) she sought paid sick in accordance with the EPSLA.

29.

The conduct of Defendant Pine Enterprises constitutes unlawful retaliation in violation of the EPSLA § 5104 as interpreted through 29 CFR § 826.150(a).

30.

As a proximate and direct result of Defendant Pine Enterprise's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional

distress, inconveniences, loss of income and benefits, humiliation, and other indignities, for which she is entitled to recover.

31.

An Employer who discharges, disciplines, or discriminates against an Employee in violation of EPSLA § 5104 is considered to have violated section 15(a)(3) of the FLSA, 29 U.S.C. 215(a)(3), and shall be subject to the enforcement provisions relevant to such violations set forth in sections 16 and 17 of the FLSA, 29 U.S.C. 216, 217.  29 CFR § 826.150.

32.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Grant Plaintiff a trial by jury as to all triable issues of fact;

(2) Grant declaratory judgment that Plaintiff's rights under the EPSLA have been violated;

(3) Grant an injunction prohibiting the Defendant from engaging in such unlawful conduct in the future;

(4)  Award full back pay from the date of Plaintiff's termination, including all raises to which Plaintiff would have been entitled but for Plaintiff's unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(5)   Award compensatory damages in an amount to be determined by a jury for Plaintiffs' emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(6)   Award prejudgment interest on any award of back pay made by the jury as required by law;

(7)   Award liquidated damages equal to any back pay for Defendants' willful violation of the EPSLA;

(8)   Award attorneys' fees, costs, and disbursements; and

(9)   Award such further and additional relief as may be just and appropriate.

Respectfully submitted this 26th day of February, 2021.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725

Stanford IO Law Group LLC
P.O. Box 19161
Atlanta, GA 31126
Telephone:  404-991-7300
Facsimile:  404-991-7299
rstanford@siolaw.com
Attorneys for Plaintiff

## **CERTIFICATION OF TYPE FONT AND SIZE**

Pursuant to LR 7.1D, the undersigned hereby certifies that the foregoing is composed of Times New Roman, size 14, and is proportionately spaced.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725
