UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRACI BURGEN,

        Plaintiff,

    v.

PINE ENTERPRISES LLC, et. al,

        Defendants.

CIVIL ACTION NO.
1:21-cv-00829-JPB

## ORDER

This matter is before the Court on Defendants Pine Enterprises, LLC ("Pine"), Jean Cabral ("Cabral") and Robert Cabral's (collectively "Defendants") Motion for Summary Judgment ("Motion").  ECF No. 62.  Having reviewed and fully considered the Motion and related filings, the Court finds as follows:

## I.   BACKGROUND[1]

Plaintiff Traci Burgen ("Burgen") began working for Pine as an accounting, payroll and human resources specialist on November 16, 2020.  Cabral, one of Pine's owners, was Burgen's supervisor.  Jane Halpin ("Halpin"), a billing and collections specialist, was responsible for training Burgen on the payroll function

---

[1] Unless otherwise noted, the following represents the undisputed facts as stated in the record.

of the job.  Cabral worked with Burgen on certain assignments and was also responsible for some of Burgen's training.

While Halpin trained Burgen, Halpin noticed that Burgen did not take notes and asked questions regarding items that had already been covered.  Halpin also testified that Burgen would receive alerts on her cellular telephone from the cameras at her home, and she would use the telephone to monitor her cats.  Burgen also improperly clocked in for work at the front door instead of at her desk and manually changed some of her time entries.

During the period of Burgen's employment with Pine, Cabral and Halpin discussed Burgen's performance several times.  For example, on December 4, 2020, Halpin told Cabral that she did not believe Burgen understood the payroll function and needed more time to improve.  Cabral disagreed that more time would be helpful.

On December 7 or 8, 2020, Cabral and Halpin had a follow-up discussion regarding Burgen's performance.  Cabral informed Halpin that Cabral planned to terminate Burgen's employment the upcoming Friday (December 11, 2022).[2] Cabral explained that she did not believe that Burgen's understanding of the

---

[2] Cabral testified that she routinely communicated termination decisions on Fridays.

payroll function was improving.  Neither the conversations between Cabral and Halpin regarding Burgen's performance nor Cabral's decision to terminate Burgen was documented in writing.

On December 8, 2020, Burgen notified Cabral that Burgen's husband had tested positive for COVID-19.  Cabral instructed Burgen to quarantine for fourteen days.  Cabral testified that she decided not to move forward with Burgen's termination on December 11 in light of the diagnosis of Burgen's husband.

On December 9, 2020, Cabral instructed Burgen to obtain a negative COVID-19 test forty-eight hours before returning to work.  Cabral also asked Burgen to return her health insurance application by email that day.

On December 10, 2020, Cabral instructed Burgen to return to work on December 28.  Burgen's quarantine period was scheduled to end on December 22, but she was previously scheduled for time off on December 21 through December 23.  Pine's offices were closed on December 24 and December 25 for the Christmas holidays.  December 28 was the next business day after the holidays.

On December 17, 2020, Cabral advertised Burgen's position on Indeed, an internet job board.

Cabral discharged Burgen when she returned to work on December 28, 2020.  Cabral provided Burgen with a separation notice that indicated that Burgen

3

was terminated for poor performance.  Cabral told Burgen that she would receive eighty hours of pay for the two weeks she was instructed to quarantine at home due to her husband's COVID-19 illness.  Burgen was employed at Pine for a total of sixteen business days.

Burgen disputes that she was terminated for performance issues.  She argues that she corrected any performance issues that were brought to her attention.  For example, she maintains that she changed her behavior when she was advised of the clocking in and cellular telephone use policies.  She also states that she made changes to her time entries to correct errors, not to gain an advantage.  Burgen asserts that she was terminated because she informed Cabral that she had been exposed to COVID-19 and Cabral later learned that federal law entitled Burgen to receive paid COVID-19 leave.  Burgen therefore contends that she was terminated in violation of the Emergency Paid Sick Leave Act ("EPSLA").

The record shows that two salaried employees who previously took COVID-19-related leave were paid while on leave and are still with the company.  One hourly employee who took COVID-19-related leave in August 2020 was not paid for the leave at the time she took it.  The employee was retroactively paid after Burgen's discharge.  Cabral testified that she did not pay the employee sooner

4

because she was not aware that she was required to pay employees for COVID-19 leave.[3]

## II.   DISCUSSION

### A.   Legal Standard

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court . . . is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (citation omitted).

---

[3] The parties dispute (and the record is unclear) whether other hourly employees who took COVID-19 leave were paid for such leave and remained employed with Pine. The Court's opinion does not rely on this disputed fact.

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact.  *See id.*  "[I]n deciding whether the movant has met this burden[,] the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party."  *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist.  *Id.*  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  In the same vein, "'some metaphysical doubt as to the material facts'" is not sufficient to create a genuine dispute.  *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (stating that "the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment") (citation omitted).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**B.    Analysis**

The EPSLA, which was passed in response to the COVID-19 pandemic, required employers to provide paid sick time to employees impacted by the pandemic in specific circumstances, including when the employee was advised to quarantine due to COVID-19-related concerns.  *See* Pub. L. No. 116-127, § 5102(a), 134 Stat 178.  Under that statute, it was "unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who . . . [took] leave in accordance with [the] [a]ct."  *Id*. § 5104.  An employer who terminated an employee in violation of the act was considered to have violated section 15(a)(3) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). *See id*. § 5105.  Therefore, EPSLA retaliatory discharge claims are properly analyzed under case law interpreting FLSA retaliation claims.

A plaintiff may establish a FLSA retaliation claim by either direct or circumstantial evidence.  *See Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1139 (N.D. Ga. 2004) (stating that a plaintiff "may demonstrate unlawful retaliation using either direct or circumstantial evidence" (citing *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997))).  Where the plaintiff "does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 [] (1973)."[4]  *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 822 (11th Cir. 2008).  Under the *McDonnell Douglas* framework, the plaintiff's first burden is to establish a *prima facie* case of retaliation.  *See id*.

"A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following:  (1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action."  *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000) (citation omitted).  With respect to the causation element, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."  *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  The Eleventh Circuit Court of Appeals has held that "a period as much as one month between the protected expression and the adverse action is not too protracted."  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.

---

[4] The *McDonnell Douglas* framework is used to evaluate discrimination and retaliation claims under several statutes.  *See, e.g.*, *Burnette*, 342 F. Supp. 2d at 1133.  The framework is applied in the same way irrespective of the statute at issue.  Therefore, the Court's discussion herein relies on some opinions applying the *McDonnell Douglas* framework to non-FLSA claims.

2004).  The plaintiff must otherwise show that "she would not have been fired but for her assertion of FLSA rights."  *Wolf*, 200 F.3d at 1343.

However, an exception to the general rule on temporal proximity exists for retaliation cases.  "[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."  *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); *see also Graham v. Barrier Techs., LLC*, No. 20-61080-CIV, 2021 WL 2431052, at *5 (S.D. Fla. June 15, 2021) (stating that the plaintiff could not establish causation because the record showed that the employer told the plaintiff that she would be laid off at least two weeks before she engaged in protected activity).

After a plaintiff establishes a *prima facie* case, "[t]he employer then must articulate a legitimate nonretaliatory reason for the adverse employment action." *Raspanti*, 266 F. App'x at 822.  The burden is one of production, not of persuasion. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005).  It "involves no credibility determination" and "has been characterized as 'exceedingly light.'"  *Id*. (citations omitted).  "So long as the employer articulates

9

'a clear and reasonably specific' [lawful] basis for its actions, it has discharged its burden of production." *Id*. (citations omitted).

If the employer meets its burden of production, then the plaintiff must establish that the employer's proffered reason is pretextual. *See Raspanti*, 266 F. App'x at 822. To establish pretext, a plaintiff must show that the proffered reason "'was not the true reason for the employment decision.'" *Id*. at 823 (citation omitted). This requirement is satisfied by demonstrating that an unlawful (or retaliatory) reason likely motivated the employer and that the employer's explanation is "'unworthy of credence.'" *Id*. at 824 (citation omitted); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (stating that the plaintiff must show that the proffered reason was false *and* that a discriminatory reason was the real reason for the employment decision). Proof of pretext can include evidence of "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the [proffered] explanation." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation omitted).

Notably, "federal courts do not sit to second-guess the business judgment of employers." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). Thus, "a plaintiff may not establish that an employer's proffered reason is

pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer." *Id.*

Here, the parties do not dispute that Burgen engaged in protected activity (took COVID-19-related leave) or that she suffered adverse action after engaging in such protected activity (termination of employment). The disagreement centers on whether Burgen has established the causation element of her *prima facie* case or, in the alternative, whether she has carried her burden to show pretext.

The temporal proximity between Burgen's COVID-19 leave and her termination is clear. Burgen was terminated on her first day back in the office after taking COVID-19 leave. The Court's analysis, however, does not end there.

While the close proximity between Burgen's COVID-19 leave and the decision to discharge her would normally be sufficient to create a genuine issue of material fact regarding causation, the record shows that the exception to the general rule applies. Cabral and Halpin discussed Burgen's performance issues and Cabral possibly made the decision to terminate Burgen prior to learning of Burgen's need for COVID-19 leave.[5] Because the record shows that Cabral at the

---

[5] Cabral argues in her brief that she informed Halpin of the decision to discharge Burgen on December 7 before learning of Burgen's COVID-19 exposure. Halpin testified that Cabral told her about the decision on the morning of December 7. Cabral, however, testified at her deposition that she informed Halpin of the decision on December 7 or 8. Viewing the evidence in the light most favorable to

very least "contemplate[d]" terminating Burgen's employment as early as December 4 (before Cabral learned that Burgen was entitled to COVID-19 leave), the evidence of temporal proximity between her leave and termination is not sufficient to show causation. *Drago*, 453 F.3d at 1308; *see also Contemplate*, Merriam-webster.com, https://www.merriam-webster.com/dictionary/contemplate (last visited Sept. 15, 2022) ("to view or consider with continued attention" or "to view as likely or probable or as an end or intention").

The Court is not convinced by Burgen's argument that Pine terminated her employment only because she took COVID-19 leave. Burgen challenges Cabral's and Halpin's testimony that they were dissatisfied with Burgen's performance and that Cabral decided to terminate her prior to learning of her COVID-19 exposure on the grounds that there is no written evidence of the discussion or the decision. However, Burgen has not cited any authority for the proposition that a personnel discussion or decision that is not reduced to writing should not receive credence.

Burgen additionally contends that because Halpin and Burgen did not inform her of certain alleged performance deficiencies, and she rectified the performance issues of which she was notified, the decision to terminate her could not have been

---

Burgen, it is possible that Cabral informed Halpin of the decision to discharge Burgen on December 8.

based on her performance.  That reasoning similarly is unpersuasive.  As the Eleventh Circuit explained in *Alvarez v. Royal Atlantic Developers, Inc.*, the question is not whether Burgen's performance was truly deficient; whether she was notified of those deficiencies and given an opportunity to correct them; or whether she remedied certain complaints.  610 F.3d 1253, 1266 (11th Cir. 2010).  The question is whether Pine was "dissatisfied with her for these or other [lawful] reasons, even if mistakenly or unfairly so, or instead merely used those complaints" as cover for retaliating against her.  *Id*.  The *Alvarez* court reiterated the settled principle that the court does not "sit as a 'super-personnel department,' and it is not [the court's] role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with [an unlawful] motive."  *Id*.

In this case, there is no evidence that genuinely disputes that Pine was dissatisfied with Burgen's performance and that Burgen, like the other predecessors in the role, was discharged because she failed to satisfy *Pine's* performance standard for the role.  The Court does not judge whether the performance deficiencies in this case warranted Burgen's discharge or whether they presented a good or bad reason to do so.  The Court simply looks at whether

ending Burgen's employment for those reasons was lawful. *See id*. at 1267. The case law in this Circuit provides that it was.

Moreover, the fact that other employees who took COVID-19 leave were not terminated is "strong evidence" that COVID-19 leave was not a motivating factor in Burgen's termination. *Cf. id*. The *Alvarez* court noted that although the record did not contain evidence regarding the performance of other employees who were also terminated from the role, the termination of those employees suggested that the supervisor behaved "exactly the same way toward all her employees." *Id*.

In all, Burgen's argument boils down to a contention that her COVID-19 leave could be the only reason for her termination because Cabral and Halpin's discussions regarding her performance are not in writing, and Burgen addressed any performance deficiencies that were communicated to her. However, she must do much more than raise "'some metaphysical doubt as to the material facts'" to survive summary judgment. *Garczynski*, 573 F.3d at 1165. Instead, it is her burden to show causation, *i.e.*, "produce substantial evidence," *id*., that "she would not have been fired but for her assertion" of EPLSA rights, *Wolf*, 200 F.3d at 1343. She has not done so.

Even if Burgen's arguments were sufficient to demonstrate causation (and thus make a *prima facie* case of retaliatory discharge), her claim would

14

nevertheless fail because she cannot show pretext.  As an initial matter, the parties do not dispute that by pointing to Burgen's alleged performance deficiencies, Pine has satisfied its "'exceedingly light'" burden to produce a legitimate reason for Burgen's termination.  *See Vessels*, 408 F.3d at 769.  Therefore, the burden shifts back to Burgen to demonstrate that her performance was not the true reason for her termination and that retaliation was the real reason.  *See St. Mary's*, 509 U.S. at 515.

For the same reasons that the Court found that Burgen has not established causation here, the Court finds that Burgen has not demonstrated pretext.  In other words, Burgen has failed to show that she was terminated for something other than performance reasons.  Burgen's dispute of Pine's proffered reason for her discharge is based on speculation regarding the timing of Pine's decision and the fact that the deliberations regarding Burgen's performance and the decision to end her employment were not made in writing.  These arguments are not sufficient to satisfy Burgen's burden on summary judgment.  *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018) (finding that the district court did not err in granting summary judgment on the plaintiff's retaliation claim where she offered only speculation (and no evidence) regarding the reason she was not selected for the position).

Burgen's reliance on *Olan v. Uvalde Consol. ISD*, No. SA-20-CV-00487-ESC, 2021 WL 4155253 (W.D. Tex. Sept. 13, 2021), does not require a different result.  The opinion in *Olan* is not binding on this court, and it is inapposite, in any event.  For example, the plaintiff in *Olan* received a glowing performance review, including a rating of "exceeding expectations" in the area of interpersonal relationships, *after* he was terminated for his alleged inability to work with co-workers and supervisors.  *Id*. at *7.  In short, Burgen has not made "enough of a showing that the jury could reasonably find for [her]."  *Walker*, 911 F.2d at 1577.  Defendants are therefore entitled to summary judgment on Burgen's claims.

Based on the foregoing analysis, the Court finds that Burgen has failed to establish a *prima facie* case of retaliation and that even if she could establish such a case, she cannot satisfy her burden to show pretext.  Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 62).  The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 19th day of September, 2022.

**J. P. BOULEE**
United States District Judge

16